FILED

2021 Sep-08  PM 12:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **Robb L. Tenney,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:20-cv-00230-AMM** |
| | ) | |
| **Social Security Administration,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Robb L. Tenney brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the parties' briefs, the court **AFFIRMS** the decision of the Commissioner.

## I.      Introduction

On November 9, 2012, Mr. Tenney protectively filed an application for benefits under Title II of the Act alleging disability as of September 18, 2009. R. 35, 110, 112, 128. Mr. Tenney's application alleges disability due to three herniated discs, numbness in three fingers, and depression. R. 111. He has at least a high school

education and has past relevant work experience as a guard-chief, stocker, department manager, air traffic controller, courier, supervisor of a cleaning crew, and sanitation supervisor. R. 1419-20.

The Social Security Administration ("SSA") initially denied Mr. Tenney's application on December 19, 2012. R. 15, 111-23, 128, 154-56. On January 24, 2013, Mr. Tenney filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 15, 128, 160. That request was granted. R. 161-65. Mr. Tenney received a hearing before ALJ Jerome L. Munford on February 26, 2014. R. 15, 35, 71-109, 128. On May 20, 2014, ALJ Munford issued a decision finding that Mr. Tenney was not disabled from September 18, 2009 through December 13, 2013, the date of last insured. R. 15, 35, 124, 128-41. Mr. Tenney was fifty-one years old at the time of the ALJ decision. R. 139.

Mr. Tenney appealed to the Appeals Council, which remanded the case to ALJ Munford. R. 15, 35, 146-47, 197-98. Mr. Tenney received a second hearing before ALJ Munford on April 18, 2016. R. 15, 33-70, 199-201. On June 27, 2016, ALJ Munford issued a decision finding that Mr. Tenney was not disabled from September 18, 2009 through December 31, 2013. R. 12, 15-28. After the Appeals Council denied Mr. Tenney's request for review of the ALJ's decision, R. 1-5, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On September 25, 2018, Judge L. Scott Coogler, United States District Court

Judge for the Northern District of Alabama, reversed and remanded for further administrative proceedings. R. 1480-97.

The Appeals Council remanded the case and directed that it be assigned to a new ALJ. R. 1501-02. Mr. Tenney received a third hearing before ALJ Mary E. Helmer on October 2, 2019. R. 1428-66. On October 24, 2019, ALJ Helmer issued a decision finding that Mr. Tenney was not disabled from September 18, 2009 through December 31, 2013. R. 1408-21. Mr. Tenney sought this court's review of the ALJ's decision. *See* R. 1406; Doc. 1.

## II. The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim

3

disability. *Id. Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled. 20 C.F.R.   § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional

capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The ALJ determined that Mr. Tenney last met the insured status requirements of the Act on December 31, 2013. R. 1408, 1410. Next, the ALJ found that Mr. Tenney did not engage in substantial gainful activity during the period from September 18, 2009 through December 31, 2013. R. 1410. The ALJ decided that, through the date he was last insured, Mr. Tenney had the following severe impairments: moderate degenerative disc disease of the cervical spine and depression. R. 1410. The ALJ found that Mr. Tenney's history of polysubstance abuse was "a non-severe impairment." R. 1411. Overall, the ALJ determined that Mr. Tenney did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 1411.

The ALJ found that Mr. Tenney had the "residual functional capacity to perform medium work" with certain limitations. R. 1413. The ALJ determined that Mr. Tenney should avoid: climbing ladders, ropes, or scaffolds; frequent fine and gross manipulation with the non-dominant left upper extremity; concentrated exposure to extreme cold; all excessive vibration, unprotected heights, and hazardous machinery. R. 1413. The ALJ found that Mr. Tenney was limited to unskilled work with the ability to attend and concentrate for two-hour periods, with

5

no more than occasional workplace changes. R. 1413. The ALJ found that Mr. Tenney should perform goal-oriented work and not production pace or assembly line paced work. R. 1413. Additionally, the ALJ found that Mr. Tenney's interactions with others should be limited as follows: "Contact with the general public is not an essential part of the job duties, and work that can be around co-workers throughout the day but with only occasional interaction with co-workers. Only occasional interaction with supervisors." R. 1413.

According to the ALJ, Mr. Tenney was "unable to perform any past relevant work," he was "an individual closely approaching advanced age," and he has "at least a high school education," as those terms are defined by the regulations. R. 1419-20. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 1420. Because the ALJ found that Mr. Tenney's "ability to perform all or substantially all of the requirements of [medium] work was impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Mr. Tenney would have been capable of performing. R. 1420. That expert testified that there are indeed a significant number of such jobs in the national economy, such as a stubber, laundry worker I, and hospital cleaner. R. 1420-21.

Based upon these findings, the ALJ concluded that Mr. Tenney did not have a disability as defined in the Act, from September 18, 2009 through December 31, 2013. R. 1421. Mr. Tenney now challenges that decision.

## III.   Factual Record

The medical records included in the transcript span many years, however, the period in question for the Commissioner's disability determination is September 18, 2009 through December 31, 2013. Mr. Tenney suffered a fall in 1995 while employed by the U.S. Army and receives service-connected military disability. Doc. 12 at 5. A C spine MRI on March 7, 2002 revealed "degenerative disc disease between C5 and C7" but was "otherwise unremarkable with some osteophytes." R. 688. An April 19, 2007 Radiology Report found "moderate discogenic degenerative changes at C5-6 and C6 and 7 with disc space narrowing and reactive vertebral bodies sclerosis" and "[m]oderate multilevel degenerative change with no evidence of dynamic instability." R. 364. Additionally, in September 2008, Mr. Tenney was hospitalized for suicidal ideation. R. 755. He was discharged after two days of inpatient care. R. 757. The court addresses the relevant medical records with respect to Mr. Tenney's physical health and mental health in turn.

### A.   Physical Health

Mr. Tenney reports a history of back pain and cervical disc disease, which he has treated with pain medication. R. 334, 803. Mr. Tenney has "complain[ed] of

neck pain since 1995 when he got hurt after being dropped during a military activity." R. 1100. Mr. Tenney has three "disc herniations in his neck." R. 1100. The records indicate that Mr. Tenney has not had physical therapy or surgery. R. 1100. The Progress Notes from an April 9, 2010 primary care appointment indicate that Mr. Tenney's disc disease was "stable at this time," and he would continue with pain medication for this condition. R. 1128.

Mr. Tenney presented to the emergency room on July 17, 2010 with "[c]hronic back pain exacerbation." R. 1114-15. The records are unclear regarding the cause of this pain; a nursing note indicates that Mr. Tenney stated "he did some heavy lifting [two] days ago when pain started," but the Progress Notes indicate that Mr. Tenney stated that two "days ago he bent down to pick up a bag and had excruciating pain in his lower back. It was an empty paper bag; [Mr. Tenney] denies any other strain." R. 1112, 1114. Images of the spine lumbosacral performed July 17, 2010 showed normal bony mineralization. R. 803-04. The findings went on to state: "There is no evidence of fracture, subluxation, or dislocation. The vertebral body heights and intervertebral disk spaces are within normal limits." R. 804.

On October 18, 2010, Mr. Tenney was seen by a primary care physician for a routine visit. R. 1100. He reported that his pain medication was "not working very well." R. 1100. His neck was painful on exam. R. 1101. The progress notes indicate that Mr. Tenney's disc disease was "worsening" and that he would be referred for

an MRI to further evaluate the neck pain and look for signs of nerve impingement. R. 1102. An Initial Pain Assessment from this visit indicates that Mr. Tenney complained of sharp, shooting, continual neck pain with a pain score of eight. R. 1104. There is no evidence in the record of a follow-up MRI.

A November 23, 2010 Outpatient Pain Reassessment indicates that Mr. Tenney complained of sharp, continual neck pain with a pain score of nine. R. 1090. The notes indicate that narcotics provided relief. R. 1090. Mr. Tenney indicated that the pain had a moderate impact on walking; a mild impact on riding in a car, driving, appetite, and mood; and no impact on hygiene, house chores, sleeping, sex life, social life, hobbies, and employment. R. 1090-91.

On May 26, 2011, Mr. Tenney reported to his primary care physician that his "pain [was] well controlled on current regimen" of Lortab and morphine. R. 1061. A June 27, 2011 Outpatient Pain Reassessment indicates that Mr. Tenney complained of throbbing, aching, continual neck pain with a pain score of six. R. 1043. A November 15, 2011 Outpatient Pain Reassessment indicates that Mr. Tenney complained of throbbing, continual back pain with a pain score of five. R. 1009.

Mr. Tenney violated his pain contract on November 17, 2011 and was "no longer [] provided narcotic medications." R. 1009. The record is not completely clear about what conduct violated Mr. Tenney's pain contract. The record indicates that

on September 8, 2008, Mr. Tenney was positive for cocaine. R. 442. On May 19, 2009, Mr. Tenney's triage notes state: "Identified problem: Issue of Repeat Prescriptions." R. 441. Additionally, Mr. Tenney's daily marijuana use appears to have contributed to his loss of access to opioid pain medications. R. 1162-63. In any event, after the violation, the VA no longer provided Mr. Tenney narcotic medication and his pain was managed by other means. R. 1009.

On December 16, 2011, Mr. Tenney complained to a nurse with his primary care practice group of neck pain, among other ailments. R. 989. On March 31, 2011, Mr. Tenney reported to the attending physician with his primary care practice group that his pain was "well controlled on current regimen" and agreed to try to wean off of pain medications gradually. R. 1075-77.

In February 2013, Mr. Tenney underwent a medical evaluation for the Veterans Administration ("VA") employment program. R. 1206-09. In that evaluation, Mr. Tenney "[d]enie[d] muscle pain and weakness." R. 1208. The evaluation stated that Mr. Tenney could lift twenty-five to fifty pounds. R. 1208. It identified these activities as restricted: sitting; handling/finger dexterity; and temperature extremes. R. 1208. It identified these activities as non-restricted: standing; walking; climbing stairs; bending/stooping/kneeling; pulling/pushing; reaching/arm extension; work outdoors; exposure to

fumes/odors/dust/chemicals/solvents. R. 1208-09. Mr. Tenney was cleared for employment. R. 1209.

### B.   Mental Health

Mr. Tenney suffers from depression, which he has treated with medication. R. 334, 1410. The Progress Notes from an April 9, 2010 primary care appointment indicate that Mr. Tenney's depression was stable at that time, and he would continue with medication to assist with sleep. R. 1128. Mr. Tenney called the VA's mental health clinic on September 30, 2011 and stated that he would like to be seen to help with "a family matter." R. 846. On the phone call, Mr. Tenney stated that the last time he saw a mental health provider was "about three years ago." R. 846. On September 30, 2011, Mr. Tenney was evaluated for depression. R. 847. He was complaining of life stressors and feeling "at [his] wits end," and the mental health provider's treatment plan consisted of future mental health evaluations for Mr. Tenney. R. 847-49.

Mr. Tenney presented to the VA for a follow-up mental health appointment on November 15, 2011. R. 1020. Mr. Tenney stated he was "at my wits end" and said: "There is something wrong with me, admit me to the hospital." R. 1020. He complained of being "depressed for some time," with symptoms of "sleeping all day" and "decreased energy," among others. R. 1020. He was hospitalized from

November 15 to November 22, 2011 for depression and substance dependence. R. 980, 991, 1018-19.

At his first post-hospitalization follow-up appointment on November 23, 2011, Mr. Tenney reported that "he has been doi[ng] better after the admission" and his suicidal ideation was resolved. R. 1004. A high risk for suicide flag was placed on Mr. Tenney's chart on November 29, 2011. R. 1002. Mr. Tenney then saw Dr. David Eakin for a therapy session on December 1, 2011, at which time Dr. Eakin reported that "Mr. Tenney presents in stable psychological condition, reporting only mild symptoms of depression at this time." R. 995. At this appointment, Mr. Tenney reported that his mood was "great" and that his sleep was adequate with medications. R. 996. At his second post-hospitalization follow-up appointment, Mr. Tenney stated "I'm doing better." R. 998. At his third post-hospitalization follow-up appointment, Mr. Tenney reported that he was "doing well" and that his mood was "happier." R. 991-92.

Mr. Tenney did not attend his mental health appointment scheduled for December 13, 2011. R. 990. Mr. Tenney did not attend his February 2, 2012 appointment with Dr. Eakin. R. 983. On March 1, 2012, Mr. Tenney saw Dr. Eakin for a therapy session. R. 980. Dr. Eakin noted that "Mr. Tenney presents in sustained stable psychological condition, reporting infrequent, transient symptoms of mild

depression." R. 980. At this appointment, Mr. Tenney reported that his mood was "doing good," and that his sleep was "adequate with medications." R. 980.

The high risk for suicide flag on Mr. Tenney's chart was removed on March 30, 2012. R. 973. The social worker's notes from March 30, 2012 indicate that Mr. Tenney reported "he 'gets a little depressed here and there' but overall he is doing 'Fine.'" R. 974. Mr. Tenney did not attend his mental health appointment scheduled for April 2, 2012. R.973.

Mr. Tenney saw Dr. Eakin for a therapy session for symptoms of depression on November 5, 2012. R. 881. The notes state that while Mr. Tenney was "previously a high suicide risk," he had "stabilized completely" before losing his job in July 2012. R. 881. The loss of his job caused Mr. Tenney to lose his vehicle and face potential homelessness. R. 881. Dr. Eakin noted that Mr. Tenney "is again experiencing suicidal ideation, although he denies plan or intention to act on the thoughts." R. 881.

In Dr. Eakin's absence, Mr. Tenney was seen by Dr. Noah Downie for a "routine supportive therapy session" on February 11, 2013. R. 1204. Dr. Downie's notes indicate that Mr. Tenney "is not having suicidal thoughts, but is having depressed thoughts." R. 1204. Mr. Tenney did not attend his appointment with Dr. Eakin on February 28, 2013. R. 1202. Mr. Tenney was seen by Psychiatric Nurse Practitioner Judy Martorana on September 6, 2013. R. 1173. Nurse Martorana's

Progress Notes state that Mr. Tenney was "having diffic[u]lty adjusting" to his children moving out and has anxiety, but his mood was "not bad." R. 1173. Mr. Tenney was also seen by Dr. Eakin on September 6, 2013. R. 1179. Dr. Eakin's Progress Notes state that "Mr. Tenney presents in moderate psychological distress, with moderately depressed mood and anxiety since his children have left home…." R. 1179. Mr. Tenney's sleep was reported to be fair with medication. R. 1180.

Mr. Tenney was seen by Dr. Eakin on October 7, 2013. R. 1162. The Progress Notes state in part: "Mr. Tenney presents with moderately depressed mood and anxiety symptoms today, but feels his mood has improved somewhat since we last met." R. 1162. The Progress Notes also indicate that Mr. Tenney reported not sleeping well and "stated [his] belief that his sleep medication no longer works." R. 1163. Also on October 7, 2013, Mr. Tenney was seen by Nurse Martorana. R. 1162. Her Progress Notes state that Mr. Tenney was "anxious," with a "decent" mood, though he was sleeping poorly. R. 1167. Mr. Tenney did not attend his November 18, 2013 appointment with Dr. Eakin. R. 1162.

**IV.   Standard of Review**

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see*

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. However, no decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.      Discussion

Mr. Tenney alleges that the ALJ's decision should be reversed and remanded because the ALJ's determination of Mr. Tenney's residual functional capacity was not based on substantial evidence. Doc. 12 at 11-20. Specifically, Mr. Tenney argues that such determination is devoid of explanations for the weight assigned to the medical opinions of Dr. Robert Heilpern and Dr. David Eakin and the rejection of limitations in those medical opinions; and the ALJ failed to consider the combined effects of Mr. Tenney's physical and mental impairments. *Id.*[1]

### A.      Weight Given to Medical Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, whether the opinion is consistent with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1527(c).

---

[1] The court received Mr. Tenney's Notice of Supplemental Authority. Doc. 18; Doc. 18-1. The filing includes no indication of how it is relevant to Mr. Tenney's claims. Additionally, Mr. Tenney's complaint and briefing include no arguments about constitutionality that the Notice of Supplemental Authority could be used to support. *See* Doc. 1; Doc. 12; Doc. 17. Therefore, the Notice of Supplemental Authority does not alter the court's analysis or decision.

The regulations and case law establish a general preference for assigning greater weight to the opinions of treating medical sources than the opinions of non-treating medical sources, and greater weight to the opinions of non-treating medical sources than the opinions of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

"Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Further, an ALJ does not err when it declines to give a medical opinion controlling weight, if the ALJ articulates specific and proper reasons for doing so. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *see also Beegle v. Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). A reviewing court must not "second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Additionally, applicable regulations provide that physicians' opinions on issues such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). The court focuses on the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician may be relevant to the ALJ's findings, but they may not be determinative, because the ALJ bears the

responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Mr. Tenney asserts that the ALJ gave insufficient weight to the medical opinions of Dr. Robert Heilpern and Dr. David Eakin.

### i.    Physical Residual Functional Capacity Assessment of Dr. Robert Heilpern

The record contains a Physical Residual Functional Capacity Assessment completed by Dr. Heilpern on December 19, 2012 as part of Mr. Tenney's initial disability determination. R. 116-19.

Dr. Heilpern described Mr. Tenney's exertional limitations as follows: may occasionally lift and/or carry twenty pounds; and may frequently lift and/or carry ten pounds; may stand and/or walk about six hours in an eight-hour workday. R. 117. Dr. Heilpern noted that Mr. Tenney had postural limitations – he may occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and he may never climb ladders/ropes/scaffolds. R. 117. Dr. Heilpern noted that Mr. Tenney had manipulative limitations and was limited in reaching overhead in any direction. R. 118. With respect to environmental limitations, Dr. Heilpern stated that Mr. Tenney should "[a]void all exposure" to hazards. R. 118. Dr. Heilpern concluded that "[g]iven the totality of evidence and [Mr. Tenney's] own complaints, a light [Residual Functional Capacity] is most reasonable." R. 119.

While Dr. Heilpern stated that a light residual functional capacity "is most reasonable," R. 119, the ALJ found that Mr. Tenney "had the residual functional capacity to perform medium work," subject to both exertional and non-exertional limitations. R. 1413. In making this determination, the ALJ specifically considered the opinion of Dr. Heilpern. R. 1418. The ALJ "assign[ed] Dr. Heilpern's opinions some weight," but noted that "Dr. Heilpern's opinions are not totally supported by his analysis, nor are they consistent with the other evidence in the record." R. 1418. The ALJ specified that the evidence in the record included "treatment notes which show few abnormalities on examination, x-rays that show no abnormalities, and cervical spine imaging denoting only moderate degenerative disc disease in the cervical spine." R. 1418. The ALJ "note[d] that the residual functional capacity adopted herein is more reasonable given the overall evidence of record." R. 1418.

Mr. Tenney argues that the ALJ's reasons for giving diminished weight to the opinion of Dr. Heilpern are not supported by substantial evidence, Doc. 12 at 12 and Doc. 17 at 2-3, but the record reflects otherwise. The ALJ stated with particularity that she was assigning "some weight" to the opinion of Dr. Heilpern and provided two specific reasons for the diminished weight: first, that the opinion was "not totally supported by [Dr. Heilpern's] analysis"; and second, that the opinion was not "consistent with the other evidence in the record," namely treatment notes, x-rays, and cervical spine imaging. R. 1418; *see also* 20 C.F.R. § 404.1527(c)(3) (noting

20

that more weight will be given to a medical opinion in which the medical source presents relevant evidence to support that opinion); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Additionally, the limitations Mr. Tenney self-reported in his function report support the ALJ's decision. *See* R. 311 (noting that he could lift twenty pounds and walk "ok"). Likewise, Mr. Tenney's evaluation for a VA employment program contradicted the limitations suggested by Dr. Heilpern. *See* R. 1206-09. Although Dr. Heilpern limited lifting and carrying to twenty pounds occasionally and ten pounds frequently, the work program evaluation stated that Mr. Tenney could lift twenty-five to fifty pounds. R. 1208. Although the evaluation did note that Mr. Tenney's sitting was restricted, R. 1208, unlike Dr. Heilpern it did not report restrictions in climbing, stooping, kneeling, or exposure. R. 1208-09. Accordingly, substantial evidence supports the ALJ's decision.

### ii.   Medical Source Statement by Dr. David Eakin

The record contains one opinion from Dr. Eakin, a treating clinical psychologist. R. 1217-19. Because Dr. Eakin is one of Mr. Tenney's treating physicians, the record contains various treatment notes that he prepared. R. 881-84, 980-82, 995-98, 1162-66, 1179-86 (treatment notes from the time period at issue); R. 1255-59, 1305-09, 1320-1325, 1353-57, 1365-68, 1369-73 (treatment notes post-dating the time period at issue).

Dr. Eakin opined that Mr. Tenney had moderate restrictions in his ability to: "Understand and remember simple instructions"; "Carry out simple instructions"; and "[M]ake judgments on simple work-related decisions." R. 1217. Dr. Eakin opined that Mr. Tenney had marked restrictions in his ability to: "Understand and remember complex instructions"; "Carry out complex instructions"; "[M]ake judgments on complex work-related decisions"; "Interact appropriately with the public"; "Interact appropriately with supervisor(s)"; "Interact appropriately with co-workers"; and "Respond appropriately to usual work situations and to changes in a routine work setting." R. 1217-18. Dr. Eakin attributed these problems to Mr. Tenney's depression and anxiety and stated that Mr. Tenney's "ability to function in workplace settings is markedly affected by low energy and poor motivation secondary to depression. This is also exacerbated by his chronic pain." R. 1218. Although Dr. Eakin's Medical Source Statement was signed on March 31, 2016, he stated that the limitations first presented in October 2013. R. 1218-19.

The ALJ properly explained that she gave little weight to Dr. Eakin's medical source statement because his conclusion was inconsistent with his treatment notes. R. 1419; *see also* R. 881-84, 980-82, 995-98, 1162-66, 1179-86. In discussing Mr. Tenney's depression, Dr. Eakin's treating notes state: he "presents in stable psychological condition, reporting only mild symptoms of depression," R. 995; he "present[ed] in sustained stable psychological condition, reporting infrequent,

transient symptoms of mild depression," R. 980; he "is again experiencing suicidal ideation, although he denies plan or intention to act on the thoughts," R. 881; he "present[ed] in moderate psychological distress, with moderately depressed mood and anxiety," R. 1179; and he "present[ed] with moderately depressed mood and anxiety symptoms," R. 1162. Additionally, other evidence from the record supports a conclusion contrary to Dr. Eakin's assessment. *See* discussion *supra* Part III.

In addition to the inconsistency with his treating notes, Dr. Eakin's medical source statement is also inconsistent with other evidence in the record. *First*, Dr. Eakin's Medical Source Statement is contrasted with the Medical Source Statement from Judy Martorana, Psychiatric Nurse Practitioner. R. 1220-22. In addition to completing a Medical Source Statement, Nurse Martorana is one of Mr. Tenney's treating nurses, and the record contains various treatment notes that she prepared. R. 1166-73, 1173-79 (containing treatment notes from the time period at issue); R. 1259-66, 1312-19, 1329-35, 1359-65 (containing treatment notes post-dating the time period at issue).

Nurse Martorana opined that Mr. Tenney had no extreme or marked restrictions. R. 1220-21. Nurse Martorana opined that Mr. Tenney had moderate restrictions in his ability to: "Interact appropriately with supervisor(s)"; and "Respond appropriately to usual work situations and to changes in a routine work setting." R. 1221. Nurse Martorana opined that Mr. Tenney had mild restrictions in

his ability to: "Understand and remember complex instructions"; "Carry out complex instructions"; "[M]ake judgments on complex work-related decisions"; "Interact appropriately with the public"; and "Interact appropriately with co-workers." R. 1220-21. Nurse Martorana opined that Mr. Tenney had no restrictions in his ability to: "Carry out simple instructions"; and "[M]ake judgments on simple work-related decisions." R. 1220. The ALJ assigned "significant weight" to Nurse Martorana's opinions because "they are internally supported, and consistent with (Mr. Tenney's) overall treatment notes." R. 1419.

*Second*, Dr. Eakin's medical source statement is inconsistent with the testimony from Richard Anderson, Ph.D., who reviewed the medical evidence and provided testimony at the hearing. R. 1419. "Dr. Anderson opined that [Mr. Tenney's] treatment records did not support [the] marked limitations[]" noted by Dr. Eakin. R. 1419. The ALJ assigned "significant weight to Dr. Anderson's opinions" because "they are supported by his testimony and consistent with the other evidence in the record, which shows that overall [Mr. Tenney's] symptoms result in no more than moderate functional limitations." R. 1419.

*Third*, Dr. Eakin's medical source statement was contradicted by the restrictions Mr. Tenney self-reported in his function report. R. 306-13. There, Mr. Tenney reported that he could pay attention "as long as needed"; could follow

written and spoken instructions "great"; could get along with authority figures "fine"; and could handle changes to routine "fine." R. 311-12.

Because Dr. Eakin's opinion was not supported by his own treatment of Mr. Tenney, or the record as a whole, the ALJ assigned "some weight" to his opinion. *See* R. 1419. Additionally, the ALJ stated the weight given to the medical opinion and the reasons for the weight given. R. 1419. The ALJ stated that Dr. Eakin's opinions "are not entirely supported by his treatment notes," and are not "consistent with the other evidence," which demonstrates "no more than moderate symptoms, except for brief periods of worsening symptoms, which quickly return to normal." R. 1419.  Substantial evidence supports the ALJ's decision.

### B.    Consideration of the Combined Effects of Physical and Mental Impairments

The Eleventh Circuit has held that when considering the "total limiting effects" of impairments, an ALJ must consider "all of a claimant's medically determinable impairments, even those not designated as severe." *Ehrisman v. Astrue*, 377 F. App'x 917, 919 (11th Cir. 2010). *See Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993); 20 C.F.R. § 404.1545(a)(2). "[I]t is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment." *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984). A statement that an ALJ "considered all symptoms" is not sufficient if the content of the ALJ's decision does not include discussion or findings

as to how "all symptoms" affected the claimant's residual functional capacity. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

The ALJ determined that Mr. Tenney "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." R. 1411. The ALJ determined a residual functional capacity that incorporated both exertional and non-exertional limitations – to account for Mr. Tenney's degenerative disc disease and his depression. R. 1413. Specifically, the ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 1413. The ALJ remarked that "[t]he medical evidence of record confirms a history of degenerative disc disease and depression," but that the resulting symptoms "do not support a more restrictive finding than provided by the residual functional capacity." R. 1414; *see also* R. 1419 (referring to Mr. Tenney's collective "conditions and symptoms").

Additionally, the residual functional capacity "accommodates the claimant's reasonable symptoms such as pain" and "symptoms such as fatigue, medication side effects, and pain." R. 1416. As for Mr. Tenney's depression, the residual functional capacity "accommodates the claimant's reasonable symptoms from depression such as difficulty with concentration and focus, difficulty staying on task, and timely

completion of activities, difficulty with memory and low energy." R. 1418. The ALJ properly considered the combination of impairments and determined Mr. Tenney's residual functional capacity accordingly.

## V.    Conclusion

The ALJ's determination that Mr. Tenney is not disabled is supported by substantial evidence, and the ALJ applied the proper legal standards in reaching this determination. The Commissioner's final decision is **AFFIRMED**. A separate order will be entered.

**DONE** and **ORDERED** this 8th day of September, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE